NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ZANDRA IGLESIA, <u>et</u> <u>al</u>.

              Plaintiffs,

     v.

CITY OF GLASSBORO, <u>et</u> <u>al</u>.,

              Defendants.

HON. JEROME B. SIMANDLE

Civil No. 04-3034 (JBS)

**OPINION**

APPEARANCES:

Vera McCoy, Esq.
P.O. Box 927
Clementon, NJ 08021
    Attorney for Plaintiffs Zandra Iglesia and Leroy Iglesia

Allan E. Richardson, Esq.
ALLAN E. RICHARDSON, LLC
915 Haddon Avenue
Collingswood, NJ 08108
    Attorney for Defendants City of Glassboro, Glassboro Police
    Department, Edwin Alicea, Daniel Eliasen and Richard Redrow

**SIMANDLE**, U.S. District Judge:

    This matter arises from the June 25, 2002 arrest of Leroy
Iglesia (then a 16-year old minor) by officers of the City of
Glassboro Police Department.  As a result of Leroy Iglesia's
arrest, Plaintiffs filed this action under 42 U.S.C. § 1983 and
New Jersey state law.  Currently before the Court is the motion
for partial summary judgment by Defendants City of Glassboro,
Glassboro Police Department, and Glassboro Police Officers Edwin

Alicea, Daniel Eliasen, and Richard Redrow[1]. [Docket Item No. 26.]   For the following reasons, Defendants' motion will be granted.

I.   **BACKGROUND**

    A.   **Facts**[2]

On June 25, 2002, Leroy Iglesia ("Iglesia") was in the parking lot at the Holly Bush Apartments in Glassboro, New Jersey, visiting his cousins when a fight broke out across the street.  (Am. Compl. ¶¶ 6-7.)  The police received several calls about the fight, with some of the callers indicating the people involved in the fight possessed firearms.  (Def.'s SMF at ¶¶ 1-2.)  Glassboro Police Officer Edwin Alicea responded to the call with Special Police Officer Brian Bozarth.  (Id.)  At his deposition, Officer Alicea testified that although he did not see any one with a gun when he arrived, "several people in the crowd pointed at [Iglesia]" and "said that he had a gun".  (Id. at 2.)  Officer Alicea testified that he approached Iglesia, asked him if

---

[1] Plaintiffs' Amended Complaint names Officer Eliasen Redrow as a Defendant.  (Am. Compl. at 1.)  In doing so, the Amended Complaint mistakenly combines the names of Officer Daniel Eliasen and Officer Richard Redrow. (See Def.'s Br. at i.)  For the purposes of this motion, the Court will interpret the Amended Complaint as including both Officer Eliasen and Officer Redrow as defendants.

[2] The facts as set forth here are those alleged in the Plaintiffs' Amended Complaint and the Plaintiffs' and Defendants' Statement of Material Facts (referred to as "Pl.'s SMF" and "Def.'s SMF.")

he had a gun, and noticed Iglesia had his hand tucked into the waistband of his pants.  (Id.)  Officer Alicea then told Iglesia to remove his hand from the waistband so his hand was visible to the officer.  (Id.)  Iglesia and Officer Alicea disagree about what happened next, with Iglesia claiming to have removed his hand when ordered and Officer Alicea claiming that Iglesia refused to remove his hand from his waist.  (Def.'s SMF at ¶ 7.)

Once the police officers on scene determined that Iglesia was refusing to comply with an order to remove his hand from his waist, they told him he was under arrest.  It is undisputed that at that moment, Iglesia fled.  (Id. at ¶ 8.)  A chase ensued, with various Glassboro police officers attempting to catch Iglesia.  (Id. at ¶ 8.)  In his deposition, Officer Eliasen testified that when he arrived at the Holly Bush Apartments, he saw a person running away from officers and he joined in the pursuit, eventually catching Iglesia.  (Id. at  ¶ 8.)  Iglesia was arrested and charged with resisting arrest (flight) and obstruction of justice.  (Id. at ¶ 13.)  Plaintiffs' version of the facts related to the conclusion of the chase differs from Officer Eliasen's as Plaintiffs claim that Officer Redrow drove into Iglesia with his police car. (Id. ¶ 7.)  Plaintiffs allege that, once on the ground, the officers "surrounded him," "put him in handcuffs and repeatedly kicked and beat [Iglesia] with their fists and night[-]sticks." (Id. at ¶ 9.)

3

After the officers took Iglesia to the police station, they claim to have waited for his mother, Plaintiff Zandra Iglesia ("Zandra Iglesia"), to arrive before questioning him.  (Def.'s SMF ¶ 14-15.)  Iglesia disputes this, alleging the police repeatedly questioned him about whether he had a gun and never offered him any medical attention for the injuries he suffered during the chase and his arrest.  (Pl.'s SMF ¶ 11-12)  Police found no firearms at the scene.  (Def.'s SMF ¶ 16.)

Once released, Zandra Iglesia took Leroy Iglesia to the emergency room.  (Pl.'s SMF ¶ 13.)  Since the accident, Iglesia has seen Dr. Harrold G. Marks, M.D., a neurologist at The Children's Hospital of Philadelphia to treat the "severe headaches" that began shortly after his arrest.  (Pl.'s Opp. Br., Ex.4, Report of Dr. Harold Marks, M.D., dated 9/25/2002.)  Concerned about possible depression, Dr. Marks recommended Iglesia see a psychologist and discussed the possibility of using anti-depressants.  (Id.)  Iglesia testified during his deposition that he no longer feels depressed, never followed Dr. Marks' recommendation to seek treatment from a psychologist and refused to take antidepressant medication. (Iglesia Dep. Tr. at 67-68.)

B.   **Procedural History**

Plaintiffs Zanda and Leroy Iglesia filed this action on June 25, 2004, making claims under 42 U.S.C. § 1983 and New Jersey law arising from the events surrounding Iglesia's arrest on June 25,

2002.[3]  The Amended Complaint is not artfully drafted and lists
only one claim; a state law claim for intentional infliction of
emotional distress.  (Am. Compl. ¶ 18.)  Although the Amended
Complaint does not clearly specify what claims Plaintiffs allege,
interpreting Plaintiffs' Complaint liberally and noting that the
Amended Complaint mentions 42 U.S.C. § 1983 and describes the
events of Iglesia's arrest, this Court has divined three claims:
(1) a claim for false arrest in violation of the Fourth
Amendment; (2) a claim for excessive use of force in violation of
the Fourth, Fifth, and Fourteenth Amendments;[4] and (3) a state
law claim for intentional infliction of emotional distress.[5]

———————————————————

[3]  It is unclear why Zandra Iglesia, Leroy Iglesia's mother
remains a plaintiff in this case.  The Court notes that Leroy was
a minor on the night of his arrest.  However, Leroy has since
achieved the age of majority and the Amended Complaint contains
no claims by Zandra Iglesia directly against Defendants or claims
that are derivative of Leroy Iglesia's claim.

[4]  Of course 42 U.S.C. § 1983 does not create substantive
rights; rather it provides a vehicle for vindicating rights
protected by the Constitution or laws of the United States.
Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). "A prima facie
case under § 1983 requires a plaintiff to demonstrate: (1) a
person deprived him of a federal right; and (2) the person who
deprived him of that right acted under color of state or
territorial law." Groman v. Twp. of Manalapan, 47 F.3d 628, 633
(3d Cir. 1995)(citing Gomez v. Toledo, 446 U.S. 635, 640 (1980)).

[5]  The Court will grant summary judgment in favor of
Defendant City of Glassboro Police Department as the police
department is not a proper defendant in this matter. "It is
well-established that in a Section 1983 cause of action, a police
department cannot be sued in conjunction with a municipality
because the police department is merely an administrative arm of
the local municipality and not a separate judicial entity."
Venner v. Delran Twp., No. 05-2480, 2007 U.S. Dist. LEXIS 4648,

Defendants now move for partial summary judgment on Plaintiffs' claims of false arrest and intentional infliction of emotional distress.  [Docket Item No. 26]  Plaintiffs filed a brief in opposition and Defendants filed no reply brief.  The Court has considered all submissions and did not hear oral argument on this motion.

## II.   SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[6]  Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty

_____

sy *9 n. 6 (D.N.J. Jan. 22, 2007); see also Bilbili v. Klein, No. 02-2953, 2005 U.S. Dist. LEXIS 11464, *9 (D.N.J. June 14, 2005); Linden v. Spagnola, No. 99-2432, 2002 U.S. Dist. LEXIS 14573, at *17-18 (D.N.J. June 27, 2002).

[6] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  See id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  See id.

Lobby, Inc., 477 U.S. 242, 255 (1986)).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[7] Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

## III. __DISCUSSION__

As noted above, Defendants motion for partial summary judgment addresses only Plaintiffs' claims of false arrest and intentional infliction of emotional distress.  As such, the Court will only address these issues.

### A.   __False Imprisonment__

False arrest is "the constraint of the person without legal justification" consisting of two elements: "(1) an arrest or detention of the person against his will; (2) done without proper legal authority or legal justification." Fleming v. United Postal Serv., Inc., 255 N.J. Super. 108, 155 (Law Div. 1992).  Thus, to prevail on a claim of false arrest, a plaintiff must prove at trial that the police lacked probable cause to arrest the plaintiff.  "The proper inquiry in a Section 1983 claim based on false arrest . . . is not whether the person arrested in fact

―――――――――

[7]  The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Country Floors v. Gepner, 930 F.2d 1056, 1061-63 (3d Cir. 1991).

committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988). "Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir. 1990) (citing Dunaway v. New York, 442 U.S. 200, 208 n.9 (1979)).

Generally, the existence of probable cause is a factual issue for the jury, see Groman v. Twp. of Manalapan, 47 F.3d 628, 635 (3d Cir. 1995), "but 'where no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate.'" Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997) (quoting Deary v. Three Un-Named Police Officers, 746 F.2d 185, 192 (3d Cir. 1984)). A district court "may conclude that probable cause did exist as a matter of law if the evidence, viewed most favorably to plaintiff, reasonably would not support a contrary factual finding." Sherwood v. Mulvihill, 113 F.3d 396, 401 (1997) (finding probable cause to arrest existed as a matter of law where narcotics detectives received a tip from a reliable informant, purchased a "substance" from the defendant and a field test identified the substance as methamphetamine); see also Sharrar, 128 F.3d at 190

8

(upholding a finding of probable cause by law where the victim identified her husband as the attacker and the police arrested him in close proximity to the alleged attack).

Defendants argue the Glassboro police officers had probable cause to arrest Iglesia based on a number of factors including: (1) a police radio call reporting a disturbance at the Holly Bush Apartments; (2) phone calls to the police department reporting that people involved in the altercation were in possession of firearms; (3) identification by members of the crowd that Iglesia possessed a firearm; (4) Iglesia's refusal to remove his hand that was tucked into the waistband of his pants (as if reaching for a stowed firearm) after police ordered it removed; and (5) Iglesia's flight.  (Def.'s Br. at 4-6.)

In opposition, Plaintiffs argue that the officers lacked probable cause because Iglesia complied with the order to remove his hands from his pants and that Iglesia's flight, in and of itself, is insufficient for an officer to have probable cause to arrest.  (Pl.'s Opp. Br. at 3-4.)  In support of their argument, Plaintiffs cites Wong Sun v. United States, 371 U.S. 471 (1963) for the proposition that flight alone does not constitute probable cause for arrest.  In Wong Sun, federal agents chased the owner of a dry cleaning business when he fled after the agents identified themselves.  See 371 U.S. at 473-74.  The U.S. Supreme Court suppressed the statements given to the police by

9

the owner upon his capture, holding that mere flight without additional indicia of criminality does not rise to the level of probable cause.  Id. at 483-84.

Wong Sun, however, is not controlling here because this case is factually distinguishable.  In fact, Wong Sun is factually distinguishable from this case in the same manner that the Third Circuit held that Cruz was factually distinguishable from Wong Sun.  In Wong Sun, the Supreme Court concluded that flight alone was not enough to support a finding of probable cause to arrest.  See 371 U.S. at 484.  In Cruz, the Third Circuit found Wong Sun distinguishable because the police officer making the arrest had knowledge of "a number of other factors, in addition to Cruz's flight, that could support a belief that he had committed a crime."  Cruz, 910 F.2d at 1077 (holding that "[f]light at the approach of law enforcement officers, when coupled with specific knowledge relating the suspect to evidence of a crime, is a proper factor to be considered in the decision to make an arrest.")

In this case, Iglesia's flight from the police was not the only factor considered by the officers who placed him under arrest.  Certain undisputed facts present in the summary judgment record indicate that the officers had other knowledge relating Iglesia to evidence of a crime.  Specifically, officers had knowledge of phone calls made to police reporting the altercation

indicated that individuals involved in the altercation possessed firearms, that the members of the crowd specifically identified Iglesia as one of the people possessing a firearm, and Iglesia fled from officers.  This evidence, taken together and when viewed in a light most favorably to Plaintiffs, is sufficient for this Court to find that officers had probable cause as a matter of law to arrest Iglesia.  The factual dispute whether or not Iglesia removed his hand from his waist is not material to this determination, and the Court assumes Iglesia's version is true for purposes of this motion.  There being no genuine issue of material fact about these events and no credibility conflicts as to these dispositive facts, this Court will grant summary judgment in favor of Defendants with respect to Plaintiffs' claim of false arrest under Section 1983 because police had probable cause to believe Iglesia had committed a crime and to arrest him.

### B.   **Intentional Infliction of Emotional Distress**

Defendants also move for summary judgment on Plaintiffs' state law claim for intentional infliction of emotional distress. According to Defendants, to prove a claim of intentional infliction of emotional distress, a plaintiff must prove that: (1) the defendant intended to inflict emotional distress on plaintiff or that emotional distress was a likely result of defendant's conduct; (2) the conduct was "extreme and outrageous;" (3) the actions of defendant were the cause of the

11

plaintiff's emotional distress; and (4) the emotional distress sustained by the plaintiff was severe.  (Def.'s Br. at 6 citing Cole v. Laughrey Funeral Home, 376 N.J. Super. 135, 146-47 (App. Div. 2005)).  In support of their motion, Defendants argue that Plaintiffs have offered no evidence that any of the officers intended to inflict emotional distress on Iglesia or that Defendants' conduct was extreme or outrageous.  (Id. at 6.) Moreover, Defendants contend that Iglesia did not suffer severe emotional distress. (Id. at 7.)  In opposition, Plaintiffs argue that there are genuine issues of material fact surrounding whether Defendants' conduct (i.e. the beating of Iglesia while handcuffed) was "extreme and outrageous" and whether Defendants intended to inflict severe emotional distress on Iglesia. Plaintiffs also contend that there are genuine issues of material fact surrounding whether Iglesia suffered "severe" emotional distress as a result of his arrest, pointing to the medical reports of Dr. Hubbs and Dr. Marks.  Plaintiffs also explain why Iglesia did not follow his doctor's recommendation regarding the medication for depression and why he discontinued his medical visits.

In New Jersey, a plaintiff states a claim for intentional infliction of emotional distress if he alleges: (1) that the defendant acted intentionally or recklessly; (2) that the defendant's conduct was extreme and outrageous; (3) the

defendant's action was the proximate cause of the plaintiff's
emotional distress; and (4) that the plaintiff's distress was so
severe that no reasonable person would be expected to endure it.
See Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 369 (1988);
Cole, 376 N.J. Super. at 146-47; Rosenberg v. JCA Assocs., No.
03-0274, 2007 U.S. Dist. LEXIS 23570, at *57 (D.N.J. Mar. 30,
2007).  With respect to whether a plaintiff's emotional distress
is severe, New Jersey courts have stated "aggravation,
embarrassment, an unspecified number of headaches, and the loss
of sleep" is insufficient to sustain a claim of intentional
infliction of emotional distress as these ailments do not rise to
the level of being "severe." Buckley, at 368; Rosenberg, 2007
U.S. Dist. LEXIS 23570, at *57.  In contrast, New Jersey courts
have found that a plaintiff's emotional distress was severe when
it resulted in "interference with day-to-day activities" or "a
need for psychiatric counseling." Harris v. Middlesex County
College, 353 N.J. Super. 31, 47 (App. Div. 2002)(citing Shelcusky
v. Garjulio, 172 N.J. 185 (2002)).  At the summary judgment
stage, a plaintiff is required to provide the court with evidence
from which a reasonable jury could find severe emotional
distress; without it summary judgment must be granted in favor of
the defendant.

In this case, the Court finds that there are genuine issues
of material fact regarding whether: (1) Defendants intended to

inflict emotional distress on Iglesia (or knew or should have known that emotional distress was likely to result from their conduct); (2) Defendants' conduct on the night of June 25, 2002 was "extreme and outrageous;" and (3) whether Defendants' actions were the cause of Iglesia's distress (an issue largely ignored in the briefing papers of both parties).  Despite these findings related to the first three factors of the test for intentional infliction of emotional distress, the Court holds that summary judgment in favor of Defendants is appropriate because Plaintiffs have failed to demonstrate that a genuine issue of material fact exists with respect to the fourth factor: whether Iglesia suffered "severe" emotional distress as defined by New Jersey law.

Plaintiffs have provided no compelling evidence that Iglesia's ailments rise to the level of severity recognized under New Jersey law.  Plaintiffs first present the reports of Dr. Harrold G. Marks in support of their claim.  In his two reports (dated September 24, 2002 and June 17, 2003), Dr. Marks, a neurologist, states that Iglesia suffers from headaches that occur every day or every other day but failed to note any emotional or psychological impairments.  Dr. Marks' second report does mention that he was "concerned with [Iglesia] having depression" and that, between visits with him, Iglesia was seen by a psychologist.  However, Dr. Marks offers no diagnosis of

14

depression and makes no recommended course of treatment for an emotional or psychological impairment suffered by Iglesia in either report.  Moreover, although Dr. Marks also mentions that Iglesia's mother reports that the psychologist "okayed him for [Social Security Disability Insurance]," the psychologist "did not give him any diagnosis" and Plaintiffs have not included a report from this psychologist in the summary judgment record. Without it, Mrs. Iglesia's statements about what the psychologist allegedly told her is inadmissible hearsay, and it does not fall within the exception of Rule 803(4), Fed. R. Evid., because it is not a statement made for purposes of medical diagnosis; it is instead Mrs. Iglesia's recollection of the unconfirmed opinion of a psychologist but absent any diagnosis.  It therefore cannot be considered as a factual basis for demonstrating severe emotional distress under Rule 56(e), Fed. R. Civ. P., requiring "such facts as would be admissible in evidence."  Finally, the diagnosis of Dr. Paul Wolf, M.D.[8] is similarly vague with respect to Iglesia's emotional or psychological condition.  Dr. Wolf states that Iglesia has a "[n]ormal neurological examination and unchanged previous diagnosis of post-concussion syndrome, depression, [and]

---

[8]  In their opposition brief, Plaintiffs argue that the reports of Dr. Marks and Dr. Hubbs create a genuine issue of material fact with respect to whether Iglesia's emotional distress was severe.  The Court notes that there is no report from Dr. Hubbs in the summary judgment records (although there is a letter from Dr. Marks to Dr. Hubbs in the record).

chronic headaches . . ." but fails to offer a solid diagnosis of depression or offer a course of treatment.  It is undisputed that Iglesia did not follow any medical course of treatment for depression, not did he significantly change his normal lifestyle.  Consequently, Plaintiffs have not raised a genuine issue of material fact suggesting that Iglesia suffered a severe emotional distress.

Further eroding Iglesia's claim of severe emotional distress is his own testimony.  At his deposition, Iglesia stated that he declined treatment by a psychologist and an offer of antidepressant medication.  (Iglesia Dep. Tr. at 67.)  When asked during his deposition whether there was a reason why he never went to see the psychologist recommended by Dr. Marks, Iglesia responded "No. No. Not really."  (Id. at 68.)  Iglesia also admitted that he had not felt depressed "recently."  As such, this Court will grant Defendants' motion as to Inglesia's claim of intentional infliction of emotional distress.

IV.   **CONCLUSION**

For the reasons described above, Defendants' motion for partial summary judgment will be granted.  The Court finds that summary judgment is appropriate with respect to Plaintiffs' claim that Iglesia was falsely arrested because the Court finds that as a matter of law Defendants had probable cause to arrest Iglesia. Summary judgment is also appropriate with respect to Plaintiffs'

16

state law claim of intentional infliction of emotional distress because Plaintiffs have failed to present a genuine issue of material fact on the issue of whether Iglesia suffered severe emotional distress as a result of Defendants' actions on the night of June 25, 2002.

The Court notes that Plaintiffs' claim of excessive force is the sole remaining claim in this case.  In the interest of expediting adjudication of the case (as the case is nearly three years old), the Court will hold the Final Pretrial Conference on July 13, 2007 at 3:30 p.m.  The form Joint Final Pretrial Order, as signed by all counsel, shall be delivered to me at the conference.  The Plaintiff's portion of the proposed order shall be prepared and sent to counsel for the Defendants by June 27, 2007.  Defendants' portion of the proposed order shall be prepared and returned to counsel not later than July 11, 2007. The Joint Final Pretrial Order may also address whether Zandra Iglesia is a proper plaintiff in this case, in light of Leroy Iglesia's achievement of the age of majority.

The accompanying Order is entered.


**June 13, 2007**                          **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           United States District Judge